## ISAAC N. DEAN v. PENNSYLVANIA R. CO.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY.

Argued October 26, 1888—Decided October 7, 1889.

[To be reported.]

1. A person about to cross a railroad track is under a legal duty to stop, look, and listen for approaching trains, and, failing to perform this duty, he is guilty of such contributory negligence as will prevent his

recovery for an injury inflicted on him by a collision with a train at a railroad crossing.

2. Under this rule, one who, riding by invitation in a vehicle in charge of another, remains in it with knowledge that it is approaching at a fast trot a crossing where a train is about due, without keeping any lookout himself and without any request to the driver to stop, is guilty of contributory negligence.

3. While the negligence of a driver, not a common carrier, cannot be imputed to a person carried in his vehicle as an act of kindness, yet the person so carried is fully responsible for his own acts of negligence: Carlisle v. Brisbane, 113 Pa. 544, distinguished; Crescent Tp. v. Anderson, 114 Pa. 643, followed.

4. The rule upon this subject of Lockhart v. Lichtenthaler, 46 Pa. 151, and Phila. etc. R. Co. v. Boyer, 97 Pa. 91, adopting the now rejected doctrine of Thorogood v. Bryan, 8 C. B. 115, so far as to impute to a passenger the negligence of his common carrier, as a defence to a third person for concurring negligence, disapproved: per Mr. Justice CLARK.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK, WILLIAMS and HAND, JJ.

No. 153 October Term 1888, Sup. Ct.; court below, No. 763 December Term 1885, C. P. No. 1.

To the number and term of the court below, Isaac N. Dean brought case against the Pennsylvania Railroad Company, lessee, operating the Southwest Pennsylvania Railroad, to recover damages for personal injuries alleged to have been suffered by the plaintiff in consequence of negligence on the part of the defendant. Issue.

At the trial February 6, 1888, testimony was adduced on the part of the plaintiff, from which the following facts were made to appear:

On the morning of November 25, 1882, Isaac N. Dean, the plaintiff, who was then about twenty-two years of age and resided near Frost station, upon the line of the Southwest Pennsylvania railroad in Fayette county, went to a store not far from said station, known as the Youngstown store, for the purpose of procuring supplies for his father. When he was about to start home, a wagon drawn by two mules, in charge of William Fields, its regular driver, was starting in the same direction with a load of supplies for the workmen in the coke company's employ, and Fields invited the plaintiff to ride with him in the wagon. The plaintiff accepted the invitation, got

into the wagon and took a seat upon some flour sacks, with his back to the mules. The wagon then started, Fields driving, and his son, a boy about twelve years old, being with him on the driver's seat. Their way led past Frost station. At a point about 324 feet distant from said railroad, the wagon passed through a set of bars and turned into a public road which crosses the railroad, at grade, at Frost station. After passing through the bars the wagon was halted at the corner of the Blackburn House, about 300 feet from the railroad, while the bars were put up by Fields's son.

While this was being done, the plaintiff looked around at the railroad. A stretch of 300 feet of the track, commencing at a point about 1300 feet distant from the crossing of the road upon which the wagon was standing, could be seen by the plaintiff. He neither saw nor heard any train approaching. He was entirely familiar with the locality, having lived about Frost station for nine months, during which time he had passed over the crossing, which the wagon was about to approach, five or six times a month, on an average. He knew that a train was due about that time, but supposed it had passed. When the bars were closed young Fields got into the wagon again, and the mules were started on at " a right fast trot."

Between the Blackburn House and a point 124 feet distant from the railroad, the view of the latter from the public road is at times obstructed by trees and houses. At the latter point the public road commences to descend to reach the level of the railroad crossing, making a descent of five and seven tenths feet and passing through a cut five or six feet deep. The evidence was conflicting as to the extent to which a person passing through this cut in a wagon, would have a view along the railroad track. Andrew J. Gilmore, a surveyor called by the plaintiff, testified that a train at any point on the railroad, within at least 1300 feet of the crossing, could be seen from a wagon in any part of the cut, except perhaps at the end of it next the railroad. The plaintiff denied that this could be done, but conceded that at a distance of ten feet from the track a person would have an unobstructed view along it for a considerable distance.

Upon reaching the brow of the hill where the descent to the railroad commences, Fields checked the speed of his team to a

walk, but kept on without stopping, and as they started down the descent the mules commenced to trot again, and kept at a rapid trot till they got on the crossing. At no time after leaving the Blackburn House and before the wagon got to the crossing, did the plaintiff look to see if a train was coming. Nor did he make any request of Fields to stop the wagon.

When the mules were just starting across the track the occupants of the wagon were startled by the whistle of an approaching train of the defendant, sounding the danger signal. The train was then about 125 feet from the crossing. Fields tried to whip up his mules and hurry them across the track, but there was not time to get over, and the wagon was struck by the train. The plaintiff being weak in consequence of a recent attack of typhoid fever, was unable, as he claimed, to disengage his feet from sacks of flour by which they were surrounded, and therefore could not jump out of the wagon, and in the collision between the train and the wagon he received severe injuries.

In support of the allegation of the defendant's negligence, several witnesses testified that they were in a position to hear any signals for the road crossing, and heard nothing until the sounding of the danger signal when the wagon was already upon the track. There was testimony tending to show that the train was running at the rate of 35 or 40 miles an hour.

At the conclusion of the plaintiff's testimony the defendant moved the court for a judgment of compulsory nonsuit, upon the ground that it appeared from the uncontradicted evidence that the plaintiff did not stop, look and listen, before crossing the railroad track, and he was therefore guilty of such contributory negligence as to prevent his recovery; whereupon the court, COLLIER, J., entered judgment of nonsuit. A motion to take off the nonsuit having been filed, and subsequently argued, the court without opinion filed, overruled the motion. The plaintiff then took this appeal, assigning inter alia, for error:

1. The entry of a compulsory nonsuit.
2. The refusal to take off the nonsuit.

*Mr. Edward Campbell* and *Mr. Thomas Patterson* (with them *Mr. David Q. Ewing*), for the appellant:

Arguments.

1. The evidence shows pretty clearly that the defendant company gave no warning of the approach of the train to the crossing, until the danger signal was sounded. The rights and duties of travelers on highways, and of railway companies, at grade crossings, are reciprocal: C. I. Co. v. Stead, 95 U. S. 161; L. etc. R. Co. v. Head, 4 Am. & Eng. R. Cas. 619. The company was bound to take such precautions as would insure the safety of persons crossing its track on the public road, and was negligent in not giving proper warning: L. etc. R. Co. v. Goety, 14 Am. & Eng. R. Cas. 627; Funston v. Railroad Co., 14 Am. & Eng. R. Cas. 640; Nehrbas v. Railroad Co., 14 Am. & Eng. R. Cas. 670; Loucks v. Railroad Co., 19 Am. & Eng. R. Cas. 305.

2. The rule of contributory negligence should be strictly construed. Nothing but positive negligence on the part of the plaintiff, either acting alone or concurring with that of the defendant, will furnish a defence to the action. The evidence discloses no negligence on the part of Dean. He did exactly what any prudent man would do under like circumstances. Having looked and listened at the point where Fields stopped the wagon, and seeing nothing of the approaching train, he allowed the driver to proceed without protest. There was no evidence that Fields was not a careful driver, competent in every way to manage his team.

3. There is no reason for imputing to the plaintiff the negligence of Fields, there being no relation of master and servant, or principal and agent, between them, and the plaintiff not being in control of the team, but being in the wagon merely through the kindness of Fields: Carlisle Borough v. Brisbane, 113 Pa. 544; Beach on Cont. Negligence, § 36; D. etc. Turnp. Co. v. Stewart, 2 Metc. (Ky.) 119; Bement v. Railroad Co., 36 N. J. L. 225; Transfer Co. v. Kelly, 36 Ohio 86 (38 Am. Rep. 558); Albion v. Hetrick, 90 Ind. 545 (46 Am. Rep. 230); Cuddy v. Horn, 46 Mich. 596 (41 Am. Rep. 178); Robinson v. Railroad Co., 66 N. Y. 11 (23 Am. Rep. 1); Dyer v. Railway Co., 71 N. Y. 228; Masterson v. Railroad Co., 84 N. Y. 247 (38 Am. Rep. 510). Crescent Tp. v. Anderson, 114 Pa. 643, is distinguishable, because there the plaintiff voluntarily agreed to test a known danger. In that case, also, as in Donnelly v. Railroad Co., 37 Alb. L. J. 376, the plaintiff was as much in control of the vehicle as the driver.

*Mr. George B. Gordon* (with him *Mr. John H. Hampton* and *Mr. William Scott*), for the appellee:

1. Admittedly Fields and Dean did not stop, look and listen before starting across the track, but attempted to cross in front of a train in full sight, and were injured in this attempt. Dean was nonsuited, not because of the negligence of Fields, though he might well have been, but because of his own negligence, which was clear on his own testimony. If he had looked, he could not have failed to see the train, which was in full view, and could have saved himself by telling Fields to stop, or by jumping out of the wagon, for he had plenty of time to do either or both. The reason he did neither was because of his own carelessness.

2. This case is on all fours with Crescent Tp. v. Anderson, 114 Pa. 643. Dean was familiar with the situation, knew that a train was due about that time and knew he was in a place of danger. The danger that caused his injury was as obvious to him as to the driver. He was bound to look, and it is vain for him to say he did not see what was open and obvious: Carroll v. Railroad Co., 12 W. N. 348; Moore v. Railroad Co., 108 Pa. 353. He was under an imperative legal duty to stop, look and listen: Lehigh etc. R. Co. v. Brandtmaier, 113 Pa. 616. His neglect of this duty is not excused because he chose to place confidence in his driver: Carlisle Borough v. Brisbane, 113 Pa. 544, differs entirely from this case, in that Brisbane did not and could not know the dangerous condition of the street.

OPINION, MR. JUSTICE CLARK:

The plaintiff, Isaac N. Dean, whilst crossing the tracks of the defendant company's road at Frost station, Fayette county, in a wagon, on the morning of the 25th of November, 1882, was struck by the locomotive of a passing train, and this suit was brought to recover damages for the injury sustained through the alleged negligence of the defendant on that occasion. The negligent act complained of is, that although the train was running at the rate of thirty or forty miles an hour, no sufficient warning of its approach to the crossing was given, either by blowing the whistle or ringing the bell.

On the part of the defendant it is contended that, assuming this to be so, the plaintiff, not only through the negligence of

the driver of the wagon, but by his own negligence, contributed to the injury, and therefore cannot recover. William Fields was the owner of the horses and wagon, and was the driver. That he was guilty of negligence cannot be denied: it was his duty to anticipate the probable passage of trains on the railroad, and, before attempting to cross the tracks, to stop, look, and listen for their approach, and this the plaintiff frankly admits Fields failed to do. When he left the corner of the Blackburn House, some three hundred feet distant from the crossing, he trotted his horses to the brow of the hill, a little more than half way, and checking them there a little, he started down the hill at a fast trot to the railroad, where the collision occurred. Mr. Gilmore, an engineer called by the plaintiff, testifies that the locomotive and cars on the track were plainly visible to a person riding in a wagon on the public road, at almost any point, for a distance of 1300 feet, subject to such temporary obstructions as might exist from intervening buildings and trees; and it is conceded on all hands that at a point ten feet from the railroad, the track itself was visible for a quarter of a mile or more.

Having failed to stop, look, and listen, before he undertook to cross the railroad tracks, Fields failed to perform a duty which the law plainly imposed upon him, and he was therefore guilty of negligence, which contributed to the injury.

But can the negligence of Fields be imputed to Dean? In Lockhart v. Lichtenthaler, 46 Pa. 151, it was held that where a passenger in a carrier vehicle is injured by a collision resulting from the negligence of those in charge of it, and those in charge of another vehicle, the carrier only is answerable for the injury; and this case was followed by Phila. etc. R. Co. v. Boyer, 97 Pa. 91, where the same rule was applied. The decision in Lockhart v. Lichtenthaler was made by adopting the conclusion of the English courts in Bridge v. Grand Junction Ry. Co., 3 M. & W. 247 (1838), in the Exchequer; Thorogood v. Bryan, 8 C. B. 115 (65 Eng. C. L. 114), and Cattlin v. Hills, 8 C. B. 123 (1849), in the Common Bench. These cases were followed in the Exchequer in Armstrong v. Lancashire & York Ry. Co., L. R. 44 Exch. 89 (1875); L. R. 10 Exch. 47.

The principle upon which all these English cases appear to have been determined is, that the passenger is so far identified

with the carriage in which he is traveling, that want of care, on the part of the driver, will be a defence to the owner of the other carriage that directly causes the injury. In Thorogood v. Bryan, which is the leading case, a passenger alighting from an omnibus was thrown down and injured by the negligent management of another omnibus, and it was held that an action would not be maintained against the owner of the latter, if the driver of the omnibus in which the passenger was riding, by the exercise of proper care and skill, might have avoided the accident which caused the injury. The rule asserted is one of general application, no matter whether the conveyances are public or private, or whether the party injured is conveyed at his own request or at the request of the driver.

In Lockhart v. Lichtenthaler, however, the rationale of the rule in Thorogood v. Bryan was not considered tenable; indeed, the reasons assigned for it in the English cases were expressly rejected, and the liability of the carrier was put upon different grounds, the grounds of public policy. "I would say," says the learned judge delivering the opinion of the court, "the reason for it is, that it better accords with the policy of the law, to hold the carrier alone responsible in such instances, as an incentive to care and diligence. The law fixes the responsibility upon a different principle in the case of a carrier, as already noticed, from that of a party that does not stand in that relation to the party injured; the very philosophy of the requirement of greater care is that he shall be answerable for omitting any duty which the law has defined as his rule and guide, and will not permit him to escape by imputing negligence of a less culpable character to others, but sufficient to render them liable for the consequences of his own." It will be observed that, as the reasons assigned for the rule in Lockhart v. Lichtenthaler extend only to cases in which the party is injured by the joint negligence of his common carrier and another, the rule has no application to cases where the injured party's conveyance is private, and this was the ground upon which Carlisle v. Brisbane, 113 Pa. 544, was decided. In that case the conveyance was private, the party injured being carried without compensation, and both of the negligent parties held to the same degree of care and negligence. The doctrine of Lockhart v. Lichtenthaler was therefore not applicable.

The principle of Thorogood v. Bryan has been approved in some of the states, and in others it has been rejected as altogether indefensible. It has been recognized and sustained in Vermont: Carlisle v. Sheldon, 38 Vt. 440; in Wisconsin: House v. Fulton, 29 Wis. 296; Prideaux v. Mineral Pt., 43 Wis. 513; Otis v. Janesville, 47 Wis. 422; and in Iowa: Payne v. Railroad Co., 39 Ia. 523. On the other hand, the doctrine has been declared unsound and untenable by the Supreme Court of the United States in the very recent case of Little v. Hackett, 116 U. S. 366. The doctrine has also been disapproved and rejected in New York: Robinson v. Railroad Co., 66 N. Y. 11; Dyer v. Railway Co., 71 N. Y. 228; Masterson v. Railroad Co., 84 N. Y. 247; in New Jersey: Bennett v. Transportation Co., 36 N. J. Law (7 Vroom) 225; N. Y. etc. Ry. Co. v. Steinbrenner, 47 N. J. Law (18 Vroom) 161–171; in Maine: State v. Boston & M. R. Co., 38 Alb. L. J. 269; in Ohio: Transfer Co. v. Kelly, 36 Ohio 86–91; in Illinois: Wabash etc. Ry. Co. v. Shacklet, 105 Ill. 364; in Kentucky: Danville Turnpike Co. v. Stewart, 2 Metc. 119; Railroad Co. v. Case, 9 Bush 728; in California: Tomkins v. Railroad Co., 66 Cal. 163; in New Hampshire: Noyes v. Town of Boscawen, 64 N. H. 361; in Minnesota: Follman v. City of Mankato, 35 Minn. 522; in Michigan: Cuddy v. Horn, 46 Mich. 596; and in Maryland: Railroad Co. v. Hogeland, 66 Md. 149; whilst in Pennsylvania, as we have already stated, the rule has been but partially adopted, and the reasons given by the English courts have been expressly rejected. In some of the states, as in Wisconsin, Michigan, and Iowa, a distinction would appear to have been taken between a public and a private conveyance; and, as an examination of the cases cited will show, it has been there held that when the injured person is riding in a private conveyance by invitation of the driver and without compensation, the driver will be regarded as his agent, and upon that ground the negligence of the latter is imputed to the former. In Pennsylvania, New York, Ohio, Minnesota, and other states, this doctrine of agency is expressly repudiated, and it is held that in such cases the driver's negligence cannot be so imputed. Thus it will be seen that the cases are conflicting: the rulings in England and in this country have been in the greatest confusion, which we think is attributable to the fact that the gen-

eral rule of Thorogood v. Bryan, which for thirty-eight years was followed in England, and in parts of this country, was rested upon wholly indefensible ground. The vain effort to sustain a rule of law, which was at variance with reason and common sense, has given rise to these various conflicting views and decisions.

The English Court of Appeals however, in a very recent case, the Bernina, Armstrong v. Mills, 12 Prob. & D. 58, decided in January, 1887, expressly overrules the case of Thorogood v. Bryan, and holds that one who is a passenger in a public conveyance does not identify himself with the conveyance, or the persons in charge of it, and that their negligence, direct or contributory, can in no respect be imputed to him. In the judgment of the court, Lord ESHER, M. R., after an extended review of the English and American cases, said: "After having thus laboriously inquired into the matter, and having considered the case of Thorogood v. Bryan, 8 C. B. 115, we cannot see any principle on which it can be supported; and we think that, with the exception of the weighty observation of Lord BRAMWELL, though that does not seem to be a final view, the preponderance of judicial and professional opinion in England is against it, and that the weight of judicial opinion in America is also against it. We are of opinion that the proposition maintained in it is erroneously unjust, and inconsistent with other recognized propositions of law. As to the propriety of dealing with it, at this time, in a court of appeals, it is a case which, from the time of its publication, has been constantly criticised, and no one can have gone into or have abstained from going into an omnibus, railroad, or ship, on the faith of the decision. We therefore think that, now that the question is for the first time before an English court of appeal, the case of Thorogood v. Bryan, 8 C. B. 115, must be overruled:" See 57 Am. Rep., 483–570. In the case of Little v. Hackett, supra, in the Supreme Court of the United States, Mr. Justice FIELD, delivering the opinion, says: "The truth is, the decision in Thorogood v. Bryan rests upon indefensible ground. The identification of the passenger with the negligent driver or the owner, without his co-operation or encouragement, is a gratuitous assumption. There is no such identity. The parties are not in the same position. The owner of a public conveyance is a carrier, and the driver or the person

managing it is his servant. Neither of them is the servant of the passenger, and his asserted identity with them is contradicted by the daily experience of the world."

Quotations might be given from many cases in the different states, illustrating the very firm and emphatic manner in which the doctrine of this celebrated case has been denied. The authorities in England, and the great current of authorities of this country, are against it. Nor can I see why, upon any rule of public policy, a party injured by the concurrent and contributory negligence of two persons, one of them, his common carrier, should be held, and the other released from liability. As to this, I speak only for myself. In my opinion there is no principle consonant with common sense, common honesty, or public policy, which should hold one not guilty of any negligence, either of omission or commission, for the negligence of another, imputed to him under such circumstances. Although in Carlisle v. Brisbane, I may appear to have accepted that doctrine, I meant merely to state that the ground upon which this court had rested this rule was better than that taken by the English courts.

But if this were not so, Fields was not a common carrier; Dean was riding in the wagon merely by invitation of Fields, who happened to be going in the direction of Dean's home with a load of provisions. He was carried without compensation, merely as an act of kindness on the part of Fields, who had sole control of the team and of the wagon. The case is similar in this respect to Carlisle v. Brisbane, supra, and to the case of Follman v. City of Mankato, 29 Minn. 817. We are clearly of opinion that if Dean himself was guilty of no negligence, the negligence of Fields cannot be imputed to him; but it is in this respect this case differs from Carlisle v. Brisbane. In the case just cited, Brisbane was a stranger: the accident occurred after night and after a fresh fall of snow: it was caused from a defect in the street. There was no evidence whatever that Brisbane knew that Cornman was a reckless or unskilful driver, or that he (Brisbane) saw, or by the exercise of reasonable care at the time could see, or ought to have seen, the dangerous condition of the street; indeed, the jury found that he was not personally aware of either, and no question was raised involving that view of the case. Here, however, the facts are of a different character. Dean knew the locality well; he had crossed

the tracks frequently at this point; he knew that a train was due about that time, and that he was approaching the railroad track at a fast trot; yet he took no precautions. He was certainly responsible for his own negligence; he sat with his back to the driver, and although he might have seen his danger, he confesses that he did not look. He said nothing by way of warning to Fields, nor did he ask him to stop, to look and listen, or to permit him (Dean) to get out; and the danger was as obvious to Dean as it was to Fields. The testimony is wholly to the effect that the plaintiff committed himself voluntarily to the action of Fields; that he joined him in testing the danger, and he is responsible for his own act. The case is ruled by Crescent Township v. Anderson, 114 Pa. 643.

The judgment is affirmed.

