HENRY C. BUNTING v. ROBERT HOGSETT.

PHŒBE J. BUNTING v. ROBERT HOGSETT.

APPEALS BY PLAINTIFFS AND DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY.

Argued November 8, 1890—Decided January 5, 1891.

[To be reported.]

1. Ordinarily, the question of proximate cause is for the jury; but, when the facts are not in dispute, it is for the court to determine whether or not an injury was the natural and proximate consequence of the negligence complained of,—a consequence likely to flow from the negligent act.

2. One who commits an act of negligence will be held to have foreseen and to be responsible for whatever consequences, in the nature of things, may ensue therefrom without the intervention of some other independent agency, although, in advance, the result actually occurring might have seemed improbable.

3. The inquiry must always be, whether there was any intermediate cause, disconnected from the prim ry fault and self-operating, which produced the injury; if there was not, the defendant's act of negligence must be considered as the proximate cause of all the consequences resulting therefrom.

4. The engineer of a locomotive, through whose negligence a collision is about to occur, may, perhaps, in any criminal aspect of the case, be justified in leaping from the engine to save himself from death or great bodily harm, even though in so doing he puts in jeopardy the lives of others.

5. But, nevertheless, the engineer or his employer, may be held responsible for an injury which resulted from his primary act of negligence, and was rendered possible by his leaping from the engine and submitting it without control to the consequences of the collision.

6. If an individual is injured by the concurrent and contributory negligence of two parties, one of whom at the time is the common carrier of his person, both tort feasors are liable to him jointly and severally; the views on this subject expressed in Dean v. Railroad Co., 129 Pa. 520, re-affirmed and applied.

7. When there is testimony that a plaintiff, suing for permanent personal injuries, has Bright's disease of the kidneys, with little if any evidence to the contrary, and none to show that said injuries caused the disease, it is proper to direct the jury to consider the fact, in determining his expectancy of life and loss of earning power.

Statement of Facts.

Before Paxson, C. J., Sterrett, Green, Clark, Williams, McCollum and Mitchell, JJ.

Nos. 104, 105, 230, 231 October Term 1890, Sup. Ct.; court below, Nos. 15, 16 March Term 1889, C. P. No. 1.

On December 6, 1888, a summons was served in trespass brought by Henry C. Bunting against Robert Hogsett, to recover damages for personal injuries alleged to have been caused by negligence. On the same day, a summons in a like action, brought by Phœbe J. Bunting, wife of H. C. Bunting, against the same defendant, was served. Issue having been joined in each of these cases, they were tried together on October 21, 1889, when the following facts were shown :

On October 13, 1883, Mr. and Mrs. Bunting were passengers upon a train proceeding upon the Southwest Pennsylvania railroad toward Uniontown. That railroad was crossed, at two points, near Lemont furnace, in Fayette county, by a private coke railroad, owned and operated by the defendant. After making the first crossing, the coke road described a semicircle and then re-crossed the track of the railroad company, the two intersections being 646 feet apart. When the train in which the plaintiffs were traveling approached the first crossing, a " dinkey engine " of the defendant, pushing a coke car, was upon the semicircular part of the defendant's track, backing toward the same crossing. The engineer of the dinkey engine was inexperienced, and had no watch or time card. The passenger train was hidden from his view by a heap of slag and cinder, dumped upon the defendant's property, until it arrived at the crossing, and until then the defendant's engineer was ignorant of its approach. The engineer of the passenger train did not see the dinkey engine until the same time. The testimony was conflicting as to whether the whistle of the passenger engine was sounded before it reached the crossing, and also as to whether the defendant's engineer whistled.

Upon seeing the passenger train, the defendant's engineer reversed his engine, but was unable to stop it, and the coke car pushed by it collided with the platform of the rear coach of the passenger train. There was testimony tending to show that this collision caused the rear truck of the coach to leave the rails, though this fact was in dispute. It was undisputed,

*Statement of Facts.*

however, that this truck was on the rails when the train was afterwards stopped. When the collision occurred, a brakeman on the passenger train pulled the cord operating the air brakes of the train, and the engineer put on the air from the engine. The result was to bring the train to a full stop, on the second crossing of the defendant's road. There was testimony tending to show that the use of the automatic cord rendered the release of the train from the brakes a matter of greater difficulty, requiring more time than if the engineer alone had operated the brakes.

Before the occurrence of the collision, the defendant's engineer and fireman, on the coke road, being in fear of their lives, jumped from the dinkey engine, the engineer having first shut off steam. The throttle of that engine became re-opened, presumably as the result of the jarring incident to the collision, and the engine started back along the semicircular piece of track toward the second crossing. The defendant's engineer, being unable to get upon his engine again, motioned to the engineer of the passenger train, which had stopped and was standing upon that crossing, to pull away from it; but this the latter was unable to do in time, and the dinkey engine, running round the arc formed by defendant's track, struck the middle coach of the passenger train in which the plaintiffs were sitting. In this second collision, the plaintiffs received the injuries for which their respective actions were brought.*

Testimony having been offered tending to show that the injuries to Henry C. Bunting had produced a permanent diminution in his earning power, and showing his expectancy of life according to the tables of mortality, the defendant put in evidence the testimony of two physicians who had examined him. One of the witnesses, Dr. Walker, testified that he had come to the conclusion, as the result of an examination made in October, 1883, that Mr. Bunting was suffering from "kidney trouble," although the witness at that time made no test of his urine; that a few days before the trial the witness made such a test, and it disclosed the presence of albumen, showing the

---

* The plaintiffs first brought actions against the Pennsylvania Railroad Company, owning and operating the Southwest Pennsylvania railroad. Judgments were rendered therein in favor of the defendant, which were affirmed by the Supreme Court: Bunting v. Railroad Co., 118 Pa. 204.

Charge of Court below.

existence of Bright's disease. The other witness, Dr. Ewing, testified that, having made an examination of his urine, the witness believed Mr. Bunting to be suffering from Bright's disease. On cross-examination Dr. Ewing testified as follows:

" Q. Would any of the symptoms, which appear in Henry Bunting now, reasonably be the result of injury to the spine, head, or brain? A. They may. Some of the symptoms are such as may result from injury to the brain; for instance, the dizziness and staggering gait. Q. What portion of the spine might be injured, to produce the symptoms that appear now? A. The lower part. The lumbar vertebræ; that is, the lower part of the back. Q. Are the symptoms of disease, which appear in Henry Bunting now, apparently of long standing? A. Some of the symptoms may have continued for a long time, and some may not. There is no way to determine."

The plaintiff called two physicians, both of whom examined Mr. Bunting soon after the receipt of his injuries. One of them testified that Bunting then exhibited symptoms of locomotor ataxia, which might have been produced by a jar or shake, injuring the spinal column, and that the witness did not see any signs of any other disease which might have produced the symptoms referred to. The other testified that the witness saw no symptoms of Bright's disease; that he thought he would have known it if that disease had existed, and that he believed Bunting to have been a sound man in 1883.

At the close of the testimony, the court, COLLIER, J., charged the jury in part as follows:

If you find that the railroad company was the cause of the accident by their engineer not whistling, and that the dinkey engineer was doing all he could under the circumstances, was acting properly and carefully, as a man ought to act under the circumstances, a reasonably careful and prudent man, and, when he found an accident was about to happen, thinking he was in danger, jumped from the engine, that would be perfectly proper, because, knowing he was not to blame for the accident that had occurred, he would properly jump from his engine to protect himself from injury. [But, if it was his negligence that caused the accident at the first crossing, if he did not act in a proper way, if he did not use proper care and his

Charge of Court below.

negligence caused the accident, then it was not right for him
to jump, although he was in danger; but his jumping from it
would have no effect one way or the other. If he caused that
accident at the first crossing, and jumped from the engine, and
it got reversed and ran round to the second crossing, striking
the passenger car, no fault being on the part of the railroad
employees, then his negligence all through was the cause of the
accident.] [6]

The learned counsel for defendant ask me to say to you that
the accident at the second crossing could not have been fore-
seen. I have looked at that carefully and considered the late
decisions, and am inclined to think that under the facts of this
case that question does not arise. From the nature of the
ground, the fact that the railroad company was upon its own
track, the conformation of the ground being well known to
defendant's employees, and, under all the circumstances, I do
not think that that principle applies. [The principles em-
bodied in the points submitted by defendant's counsel, that the
dinkey engineer could not reasonably be supposed to know the
consequences of his act, and the stopping of the passenger train
on the second crossing being an extraordinary matter, I do not
think arise in these cases, and I so instruct you. If you find,
as alleged by the plaintiffs, that the defendant's employee was
guilty of negligence, under the facts proven, in running into
the train at the upper crossing, and that he jumped from the
engine, and somehow or other it got reversed and went down
the track and struck the train again at the second crossing,
then I say to you that the defendant is liable in damages.] [7]

On the other hand, this is admitted to be a dangerous place
by both sides. My impression of the evidence is that both of
these crossings are remarkably dangerous places. That, how-
ever, is a matter entirely for you, and my impression does not
bind you. If you believe it was the fault of the railroad em-
ployees, in not whistling where they should have whistled, and
that that caused the accident at the first crossing, and that in
that view of the case the engineer jumped from the dinkey
and it happened, the defendant is not liable at all. But, as I
said before, if the engineer of the dinkey was guilty of negli-
gence, if he did not do his duty under the circumstances, and
caused the accident at the first crossing and then jumped from

Charge of Court below.

his engine, which became reversed and ran down and injured these people at the second crossing, they are entitled to recover. It depends upon that, in my view of this case, and here I have no opinion to offer you. You heard the testimony on both sides. . . . .

Now, the next question is that of damages. If you find for the defendant, you say, we find for the defendant. But, if you should take the view that there was negligence on the part of the defendant, through his employees, at this time, which caused the accident to these people, then the last question would be, What is the rule of damages ? The rule has been stated correctly by the learned counsel, but I will give it to you again. In the case of the lady, Mrs. Bunting, the rule is very well laid down by a point put to the court, and I cannot do better than read it to you: . " If the jury find for the plaintiff under the instructions of the court, the measure of damages is such sum as shall in their sound discretion compensate her for her pain and suffering and ill health, so far as the same has resulted from the injuries sustained in the collision." That is the correct rule. . . . .

Now, as to Mr. Bunting, the rule will cover more than in Mrs. Bunting's case. In his case, if you believe his evidence, he has paid some five hundred dollars for expenses, for medicine, and for medicinal attention, etc. He is entitled to that; that is compensation. [He is entitled to a reasonable sum, as is his wife, as compensation for the pain and suffering endured, but not by way of punishment; that belongs to another court. He is also entitled to compensation for the loss of earning power during the expectancy of his life. That is one of the most difficult things to determine, but you have to use simply your good judgment, for the reason that you cannot tell how long a man may live, you cannot tell whether he will live the full expectancy of his life. No one can tell that. While he was injured by the accident, he still might have had a disease that would shorten his life anyhow, and if there is proof of that, as there is proof in this case that he had Bright's disease, and that was not occasioned or hardly could be occasioned by this accident, you will take that into consideration, and consider whether, by reason of that, his expectancy of life is not shortened very much from what the tables that have been

Charge of Court below.

given in evidence show. It is alleged that his expectancy of life could not be as shown in the tables, because physicians certify he has Bright's disease. Your experience in life will tell you that that is a very dangerous disease, and if it was not caused by this accident,—and it is not pretended it was,—you will take that into consideration in determining the loss of his earning power during the time which he may be expected to live.] [a] I cannot help you upon that point any more than to thus direct your sound judgment and good sense to these matters. . . . .

Counsel for defendant respectfully request the court to charge the jury as follows:

1. The evidence discloses no such negligence on part of defendant as would make him liable in this action, and the verdict must therefore be for the defendant.

Answer: Refused.[8]

3. If the slag pile was so located and of such height that defendant's engineer could not see the approach of the passenger train in time to prevent the collision at the first crossing by the exercise of ordinary care and skill, then there was no such negligence in respect thereto as would render the defendant liable to plaintiffs in this action.

Answer: The defendant had a right to place the slag pile where he did, but if it obstructed the view of the crossing he would be held to a higher degree of care. With this qualification, this point is affirmed.

4. That even if defendant's engineer was guilty of negligence causing or contributing to the collision which occurred at the first crossing, this would give the plaintiffs no right to recover in this action, and is immaterial in this case, because the evidence shows that the injuries complained of did not occur at the first crossing, but resulted from the collision at the second crossing.

Answer: Refused.[1]

5. That if the jury find that the collision at the second crossing would not have happened if defendant's engineer had remained on the locomotive or dinkey on which he was employed, instead of jumping off at the time he did, still defendant would not be answerable for the accident, if the circumstances were such as to produce a reasonable apprehension in the mind of

Charge of Court below.

the engineer that it was necessary to jump off the locomotive in order to prevent great bodily harm or loss of life to himself; and this would be the case, even though the jury should conclude that the danger was not so great as he then apprehended.

Answer: Refused.[2]

6. That if the jury should find that defendant's engineer was in default in jumping from the locomotive on which he was employed, at the time and under the circumstances he did, and that the collision which resulted in the plaintiffs' injuries would not have occurred if he had remained on the locomotive, still the defendant, even in that event, would not be liable for such negligence of his engineer if such collision could not have been foreseen by him, to wit, the engineer, as the natural and probable consequence of his conduct.

Answer: Refused.[3]

7. If the stopping of the passenger train at the second crossing, where plaintiffs' injuries happened, was something extraordinary and which defendant's engineer could not be reasonably expected to anticipate, then defendant is not liable, even though the jury should find that the engineer was chargeable with negligence in the collision at the first crossing, and with negligence also in jumping off the locomotive at the time and under the circumstances he did.

Answer: Refused.[4]

8. That, if the jury find that the employees of the railroad company, in charge of the train in which plaintiffs were passengers, were in any way guilty of negligence which contributed to the accident resulting in plaintiffs' injuries, and even if the jury further find that defendant's employees were also guilty of negligence which also contributed to the accident, then it is such a case of mutual negligence as exempts the defendant from liability to the plaintiffs, and the verdict must be for the defendant.

Answer: If the jury find that the negligence of the defendant caused the injury complained of, then it would be no defence that the negligence of the railroad company contributed to the accident.[5]

The jury returned verdicts in favor of the plaintiffs, award-

ing to H. C. Bunting $1,733, and to Phœbe J. Bunting $500.
Rules for new trials having been discharged and judgments
entered, the defendant took the appeals at Nos. 104, 105, as-
signing for error:

1–5. The answers to defendant's points.[1 to 5]

6, 7. The parts of the charge embraced in [ ] [6 7]

8. The answer to defendant's point.[8]

And Henry C. Bunting took the appeal at No. 230, assign-
ing for error:

1. The part of the charge embraced in [ ] [a]

And Phœbe J. Bunting took the appeal to No. 231, filing
no assignments of error.

*Mr. Thomas C. Lazear* (with him *Mr. Charles P. Orr* and
*Mr. A. D. Boyd*), for the defendant:

1. The court below having refused the defendant's fifth point,
this court will assume that the jury would have found the fact
therein stated, that the circumstances were such as to produce
a reasonable apprehension in the mind of the defendant's en-
gineer that it was necessary to jump off the locomotive in or-
der to prevent great bodily harm or loss of life to himself:
King v. Thompson, 87 Pa. 365; Pittsburgh N. Bank v. Mc-
Murray, 98 Pa. 538. Upon that state of facts, he was justified
in leaving the engine, and the point should therefore have been
affirmed: 4 Bl. Com., 146; Logue v. Commonwealth, 38 Pa.
265; Murray v. Commonwealth, 79 Pa. 313.

2. Even if the negligence of the defendant's engineer caused
the collision at the first crossing, the defendant is not liable
for the results of the collision at the second crossing, if the
second collision could not have been foreseen by the engineer
as the natural and probable consequence of his conduct; and
the court below was in error in charging that this question did
not arise in these cases: Penna. R. Co. v. Kerr, 62 Pa. 353;
Penna. R. Co. v. Hope, 80 Pa. 373; Hoag v. Railroad Co., 85
Pa. 293; Haverly v. Railroad Co., 135 Pa. 50; Fairbanks v.
Kerr, 70 Pa. 86; Allegheny v. Zimmerman, 95 Pa. 287; Mor-
rison v. Davis, 20 Pa. 174; McGrew v. Stone, 53 Pa. 436;
Pittsb. S. Ry. Co. v. Taylor, 104 Pa. 316; West Mahanoy Tp.
v. Watson, 112 Pa. 574; s. c. 116 Pa. 344; Pass. Ry. Co. v.
Trich, 117 Pa. 390.

Arguments.

3. If the jury had found that the railroad company's employees were guilty of negligence which contributed directly to the plaintiff's injuries, and that the accident was also contributed to directly by negligence on the part of the defendant's employees, then there was such a case of concurring negligence as exempted the defendant, the plaintiffs' carrier, from being alone answerable to them: Lockhart v. Lichtenthaler, 46 Pa. 151; Lackawanna etc. R. Co. v. Chenewith, 52 Pa. 387; North Penna. R. Co. v. Mahoney, 57 Pa. 192; Mann v. Weiand, 81* Pa. 256; Phila. etc. R. Co. v. Boyer, 97 Pa. 100; Carlisle Bor. v. Brisbane, 113 Pa. 544. But, there was undoubtedly negligence on the part of the railroad company, in not giving warning by whistling of the approaching train; and there seems to have been no negligence on the part of the defendant's employees. The court, therefore, should have affirmed defendant's first point.

*Mr. Thomas Patterson* (with him *Mr. Edward Campbell*), for the plaintiffs:

1. A defendant is responsible for the results which actually follow his negligent act, unless some independent cause intervene to break the sequence between the wrongful act and the injurious result; and he is not to be relieved because the consequences of his negligence assume a novel or peculiar aspect: Milwaukee etc. Ry. Co. v. Kellogg, 4 Otto 469; Oil City Gas Co. v. Robinson, 99 Pa. 6; West Mahanoy Tp. v. Watson, 116 Pa. 344. In this case no independent cause intervened between the two collisions. Assuming that the defendant's engineer jumped from his engine through fear of personal injury, neither he nor his employer can make any excuse for the act that does not call in the aid of his own carelessness which produced the danger.

2. If there were concurring negligence of the railroad company, this would be no defence, as the rule of Thorogood v. Bryan, 8 C. B. 115, is no longer the law in Pennsylvania: Dean v. Railroad Co., 129 Pa. 514. The court below was very conservative in applying the contrary rule, and gave instructions on this point as favorable to the defendant as he could ask. Moreover, it is questionable whether, as to the defendant and his dinkey engine, the railroad company was bound to

whistle at all.   We submit that he was bound to keep it out of collision with the passenger train at his own risk.

The instruction complained of in our appeal was erroneous in that it went so far as to say that there was "proof" that the plaintiff had Bright's disease, and that it was not pretended to have been caused by the collision.

## HOGSETT'S APPEAL, NO. 104.

OPINION, MR. JUSTICE CLARK:

The defendant, Robert Hogsett, is the owner of the Lemont furnace, on the line of the Southwest Pennsylvania railroad, and the plaintiff, who, on the thirteenth of October, 1883, was a passenger upon one of the railroad trains, brings this suit to recover damages for a personal injury, received through the alleged negligence of the defendant's employees.   It appears that a railroad track was used in connection with the furnace, and that what is called a dinkey engine was operated thereon, in furnishing supplies of stock, ore, and coke to the furnace. The furnace track, in running out from the furnace to the coke ovens, forms, as it were, the arc of a circle, and the railroad track, crossing the furnace track twice, subtends the arc as a chord.

The collision which occurred at the first crossing, was caused by the culpable negligence of the defendant's engineer; this fact is conclusively established by the verdict of the jury, and in the determination of the questions of law raised upon the assignments of error, this fact must necessarily be assumed. It is unnecessary, therefore, to refer to the evidence bearing upon that question.   The appellant's contention is, however, that, as the plaintiff's injuries were not received in that collision, but in the collision which subsequently occurred at the other extremity of the chord, the negligence of the engineer, under the circumstances, cannot be regarded as the proximate, but as the remote cause of the injury.   Ordinarily, the question of proximate cause is for the jury; but, where the facts are not in dispute, the determination of that question is for the court: West Mahanoy Tp. v. Watson, 112 Pa. 574; s. c. 116 Pa. 344.   Some reference to the undisputed facts, there-fore, is necessary to a complete understanding of the question thus raised.

It is conceded that in the first collision, although no one was injured, the rear truck of the rear coach of the passenger train was derailed. The brakeman pulled the automatic cord which operates the air brakes. The engineer put on the air from the engine, and, the truck having regained the track, the train, which consisted of three cars, came to a full stop, with the middle car standing upon the second crossing. The engineer of the dinkey says that, about the time of, or immediately before the collision, he reversed his engine, shut off the steam, and fearing that they would be crushed, both the engineer and the fireman jumped from it to the ground. By some means, however, presumably by the jar of the collision, the throttle was re-opened, and the dinkey at once started with some speed around the arc to the second crossing, where it came in collision with the middle coach, in which the plaintiff was riding. The injuries complained of were received in this second collision. The appellant's contention is that the throttle having been closed before Leehan, the engineer, left the dinkey, the second collision, under all the circumstances, could not have been foreseen by him, as the natural and probable consequence of his conduct, and that, being in fear of his life, he had a right to quit the engine for a place of safety. It may be, perhaps, that the engineer and fireman, being under actual apprehension of great bodily harm, were, in any criminal aspect of the case, justified in leaping from the engine to save themselves, even if in so doing they should put in jeopardy the lives of others. But, assuming this to be so, it must be remembered that it was their own negligence which put them in fear of their lives, and constrained them to leap from the engine and submit it, without control, to the consequences of the collision. They will be justified, perhaps, as we have said, in saving themselves, but it does not follow that either they, or their employer, would not be held for the negligent act which not only put them in peril but resulted in personal injury to the plaintiff.

It is true, as the appellant contends, that the injury must be the natural and proximate consequence of the negligence,—a consequence likely to flow from the negligent act. The engineer would be held to have foreseen whatever consequences might ensue from his negligence without the intervention of some other independent agency, and both his employer and

### Opinions of the Court.

himself would be held for what might, in the nature of things, occur in consequence of that negligence, although, in advance, the actual result might have seemed improbable : Oil City Gas Co. v. Robinson, 99 Pa. 6. We do not know that the throttle was opened by the jar of the collision, only from the fact that it was liable to be so, and the engineer will be presumed to have foreseen what was liable to occur. The inquiry must always be whether there was any intermediate cause, disconnected from the primary fault and self-operating, which produced the injury : Milwaukee etc. Ry. Co. v. Kellogg, 94 U. S. 469. But no intermediate cause, disconnected with the primary fault and self-operating, existed in this case, to affect the question of the defendant's liability ; it was the engineer's negligence that caused the first collision, and what occurred in consequence of this collision was not broken by the intervention of any independent agent, whatever ; the first collision derailed the truck, and at the same instant opened the throttle and turned loose the destructive agency which inflicted the injuries complained of. The negligence of the defendant's engineer was the natural, primary, and proximate cause of the entire occurrence.

The appellant's further contention, however, is that, as plaintiff was a passenger on the Southwest Pennsylvania Railroad Co., it was a proper and legal defence for him to show that the negligence of the railroad company contributed to the injury; that, in such case, the negligence of the company, which was a common carrier, must be imputed to the plaintiff as a passenger in the carrier vehicle. Lockhart v. Lichtenthaler, 46 Pa. 151, and Phila. etc. R. Co. v. Boyer, 97 Pa. 91, are cited in support of this doctrine. In Lockhart v. Lichtenthaler, it was held that, where a passenger in a carrier vehicle is injured by a collision, resulting from the negligence of those in charge of it and those in charge of another vehicle, the carrier only is answerable for the injury ; and this case was followed by Phila. etc. R. Co. v. Boyer, where the same rule was applied. The decision in Lockhart v. Lichtenthaler, as we said in Dean v. Railroad Co., 129 Pa. 520, was made by adopting the conclusion of the English courts in Bridge v. Railway Co., 3 M. & W. 247 (1838), in the Exchequer ; Thorogood v. Bryan, 8 C. B. 115 (65 E. C. L. 114), and Cattlin v. Hills, 8 C. B. 123, (1849), in the Common Bench. These cases were followed in

the Exchequer in Armstrong v. Railway Co., 44 L. J. Exch. 89 (1875), L. R. 10 Exch. 47.

But Thorogood v. Bryan, supra, which is the leading case, has recently been overruled in the English Court of Appeals: The Bernina, Mills v. Armstrong, 12 Prob. & D. 58; and the doctrine, although formerly accepted in many of the states, is now generally disapproved. The authorities in England, and the great current of authority in this country, are against it. The cases are collected in Dean v. Railroad Co., supra. They are numerous, and it is unnecessary to refer to them here. What was there said was given as an individual opinion, merely, and was, to some extent, perhaps, obiter dictum, but we are now unanimously of opinion that the views, there expressed somewhat in advance, contain a proper exposition of the law. The identification of the passenger with the negligent driver, or the owner, or with the carrier, as the case may be, without his co-operation or encouragement, is a gratuitous assumption. As Mr. Justice FIELD said, in Little v. Hackett, 116 U. S. 366, " There is no such identity. The parties are not in the same position. The owner of a public conveyance is a carrier, and the driver, or the person managing it, is *his* servant; neither of them is the servant of the passenger, and his asserted identity with them is contradicted by the daily experience of the world." The rationale of the rule of Thorogood v. Bryan is expressly disavowed in our own case of Lockhart v. Lichtenthaler, and it is now rejected as untenable, and wholly indefensible.

Nor is there any rule or principle of public policy which will support such a doctrine. If a person is injured by the concurrent and contributory negligence of two persons, one of them being at the time the common carrier of his person, there is no reason, founded in public policy or otherwise, which should release one of them and hold the other. It is true, the carrier may be subjected to a higher degree of care than his co-tortfeasor, but this affords no reason why either or both of them should not be held to that degree of care, respectively, which the law imposes upon them, and to be answerable in damages accordingly. The general rule undoubtedly is, if a person suffers injury from the joint negligence of two parties, and both are negligent in a manner which contributes to the

Opinions of the Court.

injury, they are liable jointly and severally, and it would seem in principle to be a matter of no consequence that one of them is a common carrier. Neither the comparative degrees of care required, nor the comparative degrees of culpability established, can affect the liability of either.

The whole subject is fully discussed in Dean v. Railroad Co., and we do not desire to repeat what was there said. We think the law was correctly stated in the charge, and in the answers to the points submitted by the defendant's counsel; and the

Judgment is affirmed.

### HOGSETT'S APPEAL, NO. 105.

OPINION, MR. JUSTICE CLARK:

For reasons given in our opinion filed in. the case of Henry C. Bunting v. Robert Hogsett, No. 104 October Term 1890, the

Judgment is affirmed.

### H. C. BUNTING'S APPEAL.

OPINION, MR. JUSTICE CLARK:

There was evidence in this case that the plaintiff, Henry C. Bunting, at the time of the trial was suffering from what is known as Bright's disease of the kidneys. Upon a chemical analysis, albumen was found in his urine; he suffered from dizziness, failure of sight, and double vision; he was feeble, had shortness of breath, and a staggering gait, and exhibited other symptoms of this malady. The testimony of some of the medical experts was that they believed him to be suffering from Bright's disease, and there was little, if any, evidence to the contrary. The court very properly, therefore, instructed the jury that there was proof of this fact in the case; that it was a dangerous disease; and that they should take this into consideration in determining Mr. Bunting's expectancy of life and the loss of his earning power. Nor was there any evidence to justify the jury in finding that this disease was caused by the personal injuries received in the collision. The judgment is therefore

Affirmed.

Statement of Facts.

P. J. BUNTING'S APPEAL.

OPINION, MR. JUSTICE CLARK:

As we find no assignments of error filed in this case, the appellant stating that none will be filed, the prothonotary is directed to enter a non-pros.

Non-pros. entered.

