JULIA QUINLAN *v*. THE SIXTH AVENUE R. R. Co.

Plaintiff while riding in one of the defendants' horse cars was injured in consequence of a runaway team of horses belonging to the defendants running into the rear of the car in which she was sitting. It was proved that the runaway horses had been worked together every day for more than six weeks previous to the accident, had given entire satisfaction, and were considered perfectly safe. It appeared that the driver of them was not in good health, but there was nothing to show that his disease was such a one as prevented him from performing his duties as driver. *Held*, that there was no evidence of negligence on the part of the defendants.

APPEAL by defendants from a judgment entered upon the verdict of a jury.

On the 9th day of April, 1870, the plaintiff entered one of the defendants' cars for the purpose of going down to 48th street, where she lived. A small child belonging to her employer was in her charge at the time, and she took a seat in the rear end of the car, with the child in her arms.

When the car reached the vicinity of 54th street, a runaway team of horses belonging to the defendants ran violently against the rear thereof, shattering the same considerably, and throwing it off the track.

The plaintiff swore that when she saw the team coming she attempted to get to the forward part of the car ; that she had only taken a few steps when the collision occurred, and that something struck her in the back of the neck and threw her down. The conductor and driver of the car, on the other hand, swore that she was not thrown down ; that the former had his hand on her shoulder supporting her, and that he stood between her and the runaway team at the time of the collision.

The jury found a verdict in favor of the plaintiff for $4,500, for which sum, together with costs and allowance, amounting in all to $5,098 05, judgment was entered.

*John H. Platt*, for appellants.

*Culver & Wright*, for respondent.

By the Court.*—Loew, J.—To maintain her action it was not only necessary for the plaintiff to show that she had received an injury, but she was bound to assume the *onus* of proving affirmatively that the same was caused by reason of the carelessness or negligence of the defendant or its servants (*Deyo* v. *N. Y. Central R. R. Co.* 34 N. Y. 9).

This proof, we think, she failed to furnish.

The uncontradicted testimony of the defendants' foreman shows that for more than six weeks previous to the accident, the two runaway horses had been worked together every day, had given entire satisfaction, and were considered perfectly safe.

On the occasion in question they had drawn one of the defendant's cars to the upper terminus of the road at Fifty-ninth street, and while the driver was in the act of bringing them round from the upper to the lower end of the car, they, from some unexplained cause, suddenly took fright, reared and plunged, and finally broke away from him, and dashed down the avenue.

At the time when the horses became frightened, the driver held the reins in one hand, and a hook with which he carried the whiffletree in the other, as is usual when horses are detached from one end of the car and brought around for the purpose of being attached to the other end. Nevertheless, it seems from the evidence that so far from being negligent, he did all that he could under the circumstances to prevent the horses from running away.

Mr. Vanderbilt, one of the plaintiff's witnesses, in answer to a question put to him by her counsel, testified, " He (the driver) was endeavoring to keep the horses from running away;" and the conductor of the car, from which the team ran away, testified on the part of the plaintiff as follows : " I think the near horse started to run, and I don't think four men could hold a runaway horse when he starts. * * * He tried to hold them. A man cannot hold a team when he is standing on the street." And in answer to a question asked him by

* Present, Daly, Ch. J., Robinson, and Loew, JJ.

plaintiff's counsel, as to whether the driver could not have stopped the horses if he had held the lines with both hands, he said, " I don't believe he or any one else could have held them."

There was not, therefore, even upon the plaintiff's own showing, any question of negligence on the part of the driver to submit to the jury.

It is claimed, however, that the driver was sick at the time alluded to, and that the company was guilty of negligence in employing such a person.

Mr. Whitehead, the conductor, certainly did testify that the driver was sick, and that he took him to Dr. Bradly; but he also swore, in answer to another question, that he could not say that he was a well man, nor yet a sick one. His evidence upon that subject was, therefore, to say the least, very unsatisfactory.

Assuming, however, that it was sufficient to justify the jury in finding that the driver was sick, in the face of the evidence given on the part of the defendant, showing that he was not, still, that fact unsupported by other evidence, did not authorize a finding that the defendant was guilty of negligence, nor warrant a judgment in favor of the plaintiff.

There is not a particle of evidence in the case tending to show the nature of his illness, and for aught we know to the contrary, he may have had some disease which did not in the least impair his constitution or affect his usefulness as a driver.

If he was afflicted with any disease which rendered him in any degree unfit or incompetent to drive or manage a team of horses, that fact should have been proved, and not left to mere inference and conjecture.

Some such proof was requisite to warrant the jury in finding that the company was negligent in employing him as a driver. As was said by Williams, J., in *Toomey* v. *Railway Co.* (91 Com. Law Rep. 146), "a scintilla of evidence or a mere surmise that there may have been negligence on the part of the defendants, clearly would not justify the judge in leaving the case to the jury. There must be evidence upon which they might reasonably and properly conclude that there was negligence."

These remarks were approved by the Court of Appeals, in *Deyo* v. *Central R. R.* (*supra*), and dispose of this point.

This is doubtless a hard case. The plaintiff, a poor girl, by this accident, sustained an injury of the spine, by reason of which she was sick and disabled from doing any work from the day of the occurrence down to the time of the trial, a period of two years, and according to the testimony of her physicians she will in all probability never recover.

But it must be borne in mind that the same rules of law are applicable to the poor and rich alike; and however much we may sympathize with the plaintiff in her misfortune, we cannot permit our sympathy to influence our judgment, even though the defendant be a corporation.

In our opinion there was no evidence of negligence on the part of the defendant or its servants to warrant the submitting of that question to the jury, and the motion for a nonsuit made on that ground should have been granted, if not at the close of the plaintiff's case, at all events when the same was renewed after both parties had rested.

The judgment should therefore be reversed, and a new trial ordered with costs to abide event.

Judgment reversed.