## VAN HOUTEN v. FLEISCHMANN.

*(Common Pleas of New York City and County, General Term.   November 7, 1892.)*

1. MASTER AND SERVANT—MASTER'S LIABILITY—CARELESS DRIVING BY SERVANT.

   In an action for personal injuries occasioned by the negligence of defendant's driver in colliding with plaintiff on a street crossing, it appeared that plaintiff had crossed to within four feet of the curb; that defendant's horse, which theretofore had been gentle and manageable, was frightened by a passing elevated railroad train, reared, shied, and collided with and injured plaintiff.   Two of plaintiff's witnesses testified that the horse approached the crossing at full speed, and appeared not to be wholly under the driver's control.   The driver and his assistant testified for defendant that the horse was being driven at an ordinary gait; that the driver did not lose control until the horse shied; that they warned plaintiff when he was within four feet of the curb and twenty feet ahead of the horse; and that, before plaintiff reached the curb, the horse was so close that when it shied it collided with plaintiff.   *Held,* that the jury was warranted in finding the driver negligent, either in that he had control of the horse when it became frightened, twenty feet from plaintiff, and could have checked it, or in that he was driving at an inordinate rate of speed when the horse became frightened, and could not check the horse, since the jury was not bound to believe defendant's witnesses, who were chargeable with the consequences of their recklessness, and interested in the result of the action.

2. SAME—PROXIMATE CAUSE—PROVINCE OF JURY.

   The passing train and the negligent driver were concurrent causes; and, as the accident was attributable to either or both, it is for the jury to determine which was the proximate cause.

3. SAME—CONTRIBUTORY NEGLIGENCE—EVIDENCE.

   Plaintiff was not guilty of contributory negligence, as he was lawfully on the crossing, and could not reasonably anticipate the driver's recklessness in not checking the horse, and as it does not appear that he heard the warning, or, hearing it, that the time intervening between it and the collision was sufficient to enable him to appreciate the direction from which danger was threatened, and to deliberate on a means of escape.

Appeal from trial term.

Action by Walter Van Houten against Charles Fleischmann to recover for personal injuries sustained in a collision with defendant's horse, caused by the negligence of defendant's driver.   From a judgment entered on a verdict for plaintiff, and from an order denying a motion for a new trial on the minutes, defendant appeals.   Affirmed.

Argued before DALY, C. J., and BISCHOFF, J.

*C. Bainbridge Smith,* for appellant.   *James McKeen,* for respondent.

BISCHOFF, J.   As the exceptions taken to the ruling of the trial judge, in the admission of evidence for the plaintiff, objected to on behalf of the defendant, and to his refusal to charge, are not specially urged on this appeal, we refrain from discussing them at length.   They have, however, been severally examined, and found to be invalid for the assignment of error.   On the trial it was insisted for the defendant that the evidence was insufficient to establish his responsibility for the injuries resulting to the plaintiff from the accident, and two several motions for dismissal of the complaint on that ground were made and denied,—one when plaintiff rested, and the other upon the close of the evidence for both sides.   Whatever defect, however, there may have been in plaintiff's proof at the time of the first motion, was curable by evidence introduced after its denial, (*Road Co.* v. *Thatcher,* 11 N. Y. 102, 112; *Tiffany* v. *St. John,* 65 N. Y. 314, 317,) though as a part of the defendant's case, (*Painton* v. *Railroad Co.,* 83 N. Y. 7;) and plaintiff's right of recovery must be measured, therefore, by the evidence as it stood when the case was submitted to the jury.   A motion for a new trial was also made on behalf of the defendant on the several grounds specified in section 999 of the Code of Civil Procedure, which was likewise denied, and, as the several motions were founded upon the alleged insufficiency of the evidence, they may be properly discussed as one.   The facts undisputed are that defendant is the

surviving partner of Fleischmann & Co.; that the team with which plaintiff collided was the property of his firm, and the driver thereof at the time of the collision in its employ; that plaintiff was proceeding along the westerly side of Greenwich street, in a southerly direction, intending to cross Perry street, and that he had succeeded in crossing to within about four feet of the curb of the southerly sidewalk of Perry street, when he was struck by defendant's team, which was approaching Greenwich street, along Perry street, in an easterly direction; and that the violence of his contact with defendant's team had the effect of throwing plaintiff against an elevated railroad pillar situated near the curb, with such force that he sustained the injuries complained of. The unchallenged evidence for the defendant to that effect also establishes the accuracy of his contention that, when the team reached the crossing along which plaintiff was at the time proceeding, the horse, which theretofore had been of uniformly gentle and manageable disposition, was frightened by a passing elevated railroad train, reared and shied in the direction of the plaintiff, and thus caused the collision. Holmes, a witness for the plaintiff, said that just before the collision he saw the team approaching along Perry street at full speed, estimated by him to be at the rate of seven miles an hour, jumping and galloping, and in the act of running away, while the driver was holding on; and Burke, another witness of plaintiff, partly corroborates Holmes by saying that the horse did not appear to be wholly under the control of the driver. As the shying of a horse, or the running away of a team, is not necessarily the result of any careless or negligent act, negligence of the driver cannot be inferred therefrom, (*Quinlan* v. *Railroad Co.*, 4 Daly, 487, 488; *Gottwald* v. *Bernheimer*, 6 Daly, 212; *O'Brien* v. *Miller*, [Conn.] 22 Atl. Rep. 544; *Button* v. *Frink*, 51 Conn. 342; *Brown* v. *Collins*, 53 N. H. 442; *Turner* v. *Buchanan*, 82 Ind. 147;) and the facts, so far as they have been recited, may be conceded to be insufficient to entitle plaintiff to recover; but when defendant called as witnesses Luhman, the driver, and Gerdes, his assistant, they denied that the horse had at any time run away, become unmanageable, or lost to the control of the driver, until it shied, as already stated. Both Luhman and Gerdes also maintained that the team was being driven at an ordinary gait or "dog trot," thus contradicting Holmes to the effect that its speed was at the rate of seven miles an hour; and they further agree that when they first saw plaintiff on the crossing he was four feet from the curb of the southerly sidewalk, and they about twenty feet west of him, on Perry street; that at this time they uttered their first warning; and that before plaintiff had succeeded in reaching the curb the horse was so close upon him that when it shied at the crossing it threw him, as stated. The testimony of Luhman and Gerdes implies a confession of recklessness to a degree amounting almost to a wanton and culpable disregard for the safety of human life and limb. Why did they undertake to warn the plaintiff while still twenty feet distant from him? That they did so seems susceptible of but two explanations: Either the horse had then already become frightened by the passing train, or it is true, as Holmes said, that the team was being driven at an inordinate rate of speed. From which was danger apprehended? If from the frightened horse, might not the jury have found from the facts that it was of uniformly gentle and manageable disposition, and that it was being driven at an ordinary gait, and was under control of the driver; that its forward course could have been checked within the twenty feet remaining between it and the plaintiff, if proper effort in that behalf had been made? If the danger was apprehended from the team's inordinate rate of speed, could not the jury have concluded that the driver was powerless for the time being to stop the team within the distance remaining to the crossing, in time to avoid injury to the plaintiff, though he had endeavored to do so? We think the evidence is capable of either inference, and the jury were not bound to believe the statements of either Luhman or Gerdes that efforts to avoid injury to the plaintiff were

made. Both of these witnesses were directly chargeable with the consequences of their recklessness, and interested in the result of the action. *Elwood* v. *Telegraph Co.*, 45 N. Y. 549; *Honegger* v. *Wettstein*, 94 N. Y. 252; *Bank* v. *Diefendorf*, 123 N. Y. 191, 25 N. E. Rep. 402. That the team was being driven at an inordinate and reckless rate of speed is rendered the more plausible from the admissions of Luhman and Gerdes that it had proceeded close to the plaintiff, a distance of twenty feet, before the latter had as yet succeeded in crossing the four remaining feet between him and the curb.

Either of the inferences mentioned would establish the driver's negligence, for which the defendant, his master, could be held answerable. Driving at an unusual rate of speed, even in a city street, has been held not to constitute negligence *per se*, (*Crocker* v. *Ice Co.*, 92 N. Y. 652;) but it is a circumstance to be considered, with others, in determining whether or not the driver's carelessness or negligence caused the injury, (Shear. & R. Neg. § 305;) and, because the lawful presence of pedestrians on the street crossing of a populous city may be reasonably apprehended, the law imposes the duty upon the drivers of horses and vehicles to exercise a reasonable degree of care and precaution in approaching them to avoid injury; and, if the driver fails to look out for pedestrians, or, seeing them, omits to exercise reasonable care to avoid injury to them, he is chargeable with negligence, (*Murphy* v. *Orr*, 96 N. Y. 14; *Birkett* v. *Ice Co.*, 110 N. Y. 504, 18 N. E. Rep. 108;) and it is the element of concurrent negligence of the driver which distinguishes the present case from *Gottwald* v. *Bernheimer*, 6 Daly, 213; *Quinlan* v. *Railroad Co.*, 4 Daly, 487; *Hammack* v. *White*, 11 C. B. (N. S.) 588; *Herrick* v. *Sullivan*, 120 Mass. 576; *Brown* v. *Collins*, 53 N. H. 442; and others cited in the brief of the learned counsel for the appellant,—in each of which absence of all concurrent fault or blamableness on the part of the driver was either proved or conceded.

It is urged that, even conceding the driver's negligence, the accident was directly due to the shying of the horse, which the driver could not reasonably have apprehended, and that this was caused by the passing train; therefore the passing train was the proximate, and the driver's negligence the remote, cause, and defendant cannot be made answerable. Whether, however, a cause which contributes to an accident is proximate or not is not determined with reference to the order in which the several contributing elements succeed one another, but with reference to the efficiency of these elements, (16 Amer. & Eng. Enc. Law, pp. 436, 444; 3 Lawson, Rights, Rem. & Pr. p. 1743, § 1029;) and so it was held in *McCahill* v. *Kipp*, 2 E. D. Smith, 413, that a driver who left his horse standing unhitched and unattended in the street was liable for the injuries caused by the running away of the horse, although the runaway would not have occurred but for the act of a stranger in frightening the animal, and though the driver used all reasonable effort to stop the animal after it had started.

From the evidence, also, it was competent, as before stated, for the jury to find that the driver was negligent in not checking the onward course of the team when the horse first became frightened, 20 feet distant from the plaintiff, or that when it became so frightened he was, because of its inordinate rate of speed, powerless to stop the team, or turn it aside within the distance remaining between it and the plaintiff, when the driver first saw him on the crossing, so that both the passing train and the driver's negligence were concurrent causes, equally efficient in producing the result; and, such being the case, the accident is attributable to both or either, and it is for the jury to determine which of them is the proximate cause. *Houghtaling* v. *Shelly*, (Sup.) 3 N. Y. Supp. 904; *Whittaker* v. *Canal Co.*, Id. 576; *Ring* v. *Cohoes*, 77 N. Y. 90; *Ehrgott* v. *Mayor, etc.*, 96 N. Y. 264, 283; *Searles* v. *Railway Co.*, 101 N. Y. 661, 5 N. E. Rep. 66; *Taylor* v. *City of Yonkers*,

105 N. Y. 202, 208, 11 N. E. Rep. 642; *Bunting* v. *Hogsett,* (Pa. Sup.) 21 Atl. Rep. 31, 33, 34; *Phillips* v. *Railroad Co.,* 127 N. Y. 657, 27 N. E. Rep. 978.

So, also, we are of the opinion that it sufficiently appears from the evidence that plaintiff was free from all contributory negligence in causing the accident. He was lawfully upon the crossing, and had a right to assume that the driver of the vehicle would approach it with that degree of care which the law imposes upon him as a duty, (*Murphy* v. *Orr, supra,*) and could not reasonably have anticipated the driver's recklessness in not checking his horse. It does not appear that he heard the warning, or, hearing it, that the time intervening between it and the collision was reasonably sufficient to have enabled him to appreciate the direction from which danger was threatened, and to have deliberated upon a means of escape, (*Quill* v. *Railroad Co.,* [Com. Pl. N. Y.] 11 N. Y. Supp. 80, affirmed in 126 N. Y. 629, 27 N. E. Rep. 410;) and absence of contributory negligence is sufficiently shown if it appears from the circumstances attending the injury, (*Warner* v. *Railroad Co.,* 44 N. Y. 465, 471; *Johnson* v. *Railroad Co.,* 20 N. Y. 65; *Hart* v. *Bridge Co.,* 80 N. Y. 622.) The judgment and order should be affirmed.

Judgment and order affirmed, with costs.