HENRIETTA C. WEINSTOCK, as Administratrix, etc., of LOUIS WEINSTOCK, Deceased, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 18387.)

HENRIETTA C. WEINSTOCK, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 18386.)

BLANCHE R. STEIGMAN, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 18388.)

Court of Claims, December 2, 1927.

State — claims against State — claimant's intestate was killed and other claimants suffered injuries when run down and struck by horse attached to New York National Guard cavalry troop — horse was being ridden by member of troop at time when troop was drilling — evidence shows trooper did all he was bound to do under circumstances and fails to disclose any act of negligence on his part — State not liable and claim dismissed.

The State of New York is not liable for damages arising from the death of claimant's intestate and the injuries suffered by claimants in the other actions herein,

by reason of being run down and struck by a horse attached to Troop C, New York National Guard, and ridden by a member thereof at a time when said troop was drilling, for the evidence shows that the trooper did all he was bound to do under the circumstances and fails to disclose any act of negligence on his part.

CLAIMS against State of New York for damages arising by reason of National Guard cavalry horse bolting and running down claimant's intestate and others.

*Delehanty, Giffin, Hannon & Evans,* for the claimants.

*Albert Ottinger, Attorney-General [William T. Moore, Deputy Attorney-General,* of counsel], for the defendant.

PARSONS, J. The above-entitled and numbered claims came on for trial at a Special Term of this court held in the city of New York on February 17, 1927. All of these cases having grown out of the same accident, it was stipulated that they be tried together and the evidence, so far as applicable, be applied by the court in its decision to the respective cases. In action No. 1 the claimant's intestate was killed, and in actions Nos. 2 and 3 the claimants were somewhat seriously injured.

There could be no possibility of the State being liable in these claims were it not for the enactment of chapters 802, 803 and 813 of the Laws of 1926. These acts, in their effect, were the same and the particular portion of each which is of importance reads as follows: " If the court finds that said injuries were caused by the negligence of the driver of such horse in any way and without any contributory negligence on the part of the claimant," then, the acts further provide that if such is found, the State shall be liable.

Therefore, unless this court shall find that the trooper, Kerr, the rider of the horse, was negligent, then there can be no recovery.

On the 22d day of May, 1923, there was, and now is, a troop of cavalry known as Troop C, a part of the National Guard of the State of New York, which troop had its armory in Brooklyn, N. Y.

On said 22d day of May, 1923, said troop of cavalry, of which Kerr was a member, had been ordered out to drill and at about nine-forty-five P. M. on that day said troop was returning to its armory, which it had left some hours previously, along what is known as the Ocean Parkway, a public thoroughfare.

Ocean Parkway runs about east and west and at a certain point is crossed by Church avenue running about north and south. Ocean Parkway has a vehicular roadway and several bridle paths running parallel with said roadway.

51

On the day in question the only thing said Kerr did after arriving at said armory preparatory for said drill was to adjust the cinch or girth of the saddle on a very gentle horse named " Amazon." This horse was one of the horses furnished for use by the members of said troop and was noted for its docility and gentleness.

After adjusting the cinch or girth, said Kerr mounted said horse and went to the drill grounds, and several hours thereafter was returning with said troop to the armory along said Ocean Parkway. When he had reached a point about a quarter of a mile distant from the intersection of Ocean Parkway and Church avenue, he was directed by his superior to dismount and to tighten the saddle girth after he had informed the said superior, who was a sergeant, that the same had become loosened since leaving the armory and during the drill or on the way back to the armory. This direction of the sergeant Kerr obeyed and dismounted for the purpose of tightening said girth, and in the meantime the main body of the troop had moved on toward the armory.

Kerr, after adjusting the saddle girth, remounted his horse and, at the direction of said sergeant, he urged the horse forward for the purpose of overtaking the main body of the troop, whereupon the horse bolted, or, in other words, took the bit in his teeth, and Kerr, although trying so to do, was unable to stop or control the horse which continued at a rapid gait up Ocean Parkway toward the intersection of Church avenue.

In the meantime and while Kerr was tightening the saddle girth and remounting his horse, the main body of the troop had passed the intersection of Ocean Parkway and Church avenue, and north and south traffic had been commenced across Ocean Parkway and along Church avenue. The claimants in claims Nos. 2 and 3 and the claimant's intestate in claim No. 1 had started to cross Ocean Parkway along Church avenue and, when a short distance from the curb, were run down and struck by the horse which Kerr was riding. The intestate was so injured that he died shortly thereafter from his injuries and the other two claimants, one of whom was the wife of the intestate and the other a friend of hers, were somewhat seriously injured.

The only question in this case is, was Kerr negligent. This court is in the same position as a finder of facts as a jury would be in determining whether there was or was not negligence on the part of Kerr. This is a question of fact to be determined by this court, or if it were to be tried in a court where there was a jury, it was a question of fact to be submitted to a jury.

It was held in *Van Houten* v. *Fleischman* (1 Misc. 130; affd., 142 N. Y. 624) that if a jury finds there was negligence, such finding

would not be disturbed on appeal. That being so, the converse thereof must be true, that if the jury finds there was no negligence, the finding must likewise stand.

Now, let us see what Kerr did that can be construed as negligence or want of negligence. *First*, at the armory some hours before the accident, Kerr adjusted the saddle girth, mounted his horse and proceeded to the drill grounds, drilled and started to return with the troop to the armory. There is no proof that he adjusted the girth at the armory in any negligent manner; to the contrary, it appears to have been so adjusted that the saddle was in place during the drill and up to a short time previous to the accident. *Secondly*, did he negligently tighten the girth shortly previous to the accident under the direction of his superior? There is no proof of this nor that such accident was caused by any negligent adjusting or tightening of the girth at that time. *Thirdly*, did he do anything that caused the horse to bolt? The only proof is that under the direction of his superior, he urged the horse forward to overtake the main body of the troop and that the horse took the bit in his teeth and bolted forward at a very rapid gait. When Kerr became aware that the horse was out of control, he shouted warnings and attempted to control said horse. This court cannot speculate as to what might have been done by Kerr to control said horse. He might have taken out his knife and cut the horse's throat; he might have thrown the horse to the pavement with obviously dangerous consequences to himself. The only question is, did he make a reasonable effort, under the circumstances, taking into consideration all of the conditions, to control the horse. We believe that he did do all that was reasonably required of him in such an emergency. He had been a member of this troop for some time and had had some previous experience with horses and was a reasonably fair horseman. He did all he was bound to do under the circumstances and was not guilty of negligence in any way, and, therefore, the State, under the enabling acts, is not liable in any of said claims and all of said claims should be dismissed on the merits.

POTTER, J., concurs.